IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES MCELROY,** | : | **Civil Action No. 09-5475** |
| **Plaintiff** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **v.** | : | |
| | : | |
| **FIVE STAR INTERNATIONAL, LLC.,** | : | |
| **JOHN A. SCHELER,** | : | |
| **FRED P. SCHELER,** | : | |
| **AND PETER F. SCHELER** | : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

### I.  PROCEDURAL HISTORY:

1.  Plaintiff commenced this action on November 17, 2009, with the filing of the Complaint which is attached hereto as Exhibit 1.

2.  Count I of Plaintiff's Complaint purports to allege a cause of action against defendants under the Fair Labor Standards Act (FLSA). Count II of Plaintiff's Complaint alleged a cause of action against defendants alleging a violation of public policy sufficient to support a claim for wrongful discharge under Pennsylvania law, citing generally a violation of the public policy encompassed in the Wage Payment and Collection Law (WPCL).

3.  On April 15, 2010 an Order was entered by the late Honorable Thomas Golden, Dismissing Count II of the Complaint.

4.  On May 4, 2010, Defendants filed an Answer to Plaintiff's Complaint with Affirmative Defenses, which is attached hereto as Exhibit 2.

5.  Discovery was completed on or by November 1, 2010 and this instant motion is filed pursuant to the Court's December 1, 2010 deadline for Summary Judgment Motions.

6.      On November 30, 2010, counsel stipulated to the dismissal of the individual claims against Peter Scheler and Fred Scheler.

## II.     STATEMENT OF FACTS:

7.      Moving Defendants incorporate by reference all paragraphs contained in the Statement of Undisputed Facts, as fully as though the same were here set forth at length. *See,* Exhibit 10 attached hereto.

## III.    STANDARD FOR SUMMARY JUDGEMENT

8.      Federal Rule of Civil Procedure 56 provides the mechanism whereby a party may file for summary judgment:

> (b)     By a Defending Party.  A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim.

F.R.C.P. 56

9.      Summary Judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the most favorable light to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law.  State Farm Mutual Automobile Insurance Company, et. al. v. Carter et. al., 287 F. Supp. 2d 587 (E.D. PA 2003).

10.      The moving party has the initial burden to identify evidence that it believes shows an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

11.      When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'--that is, pointing out to the District Court--that there is an absence of evidence to support the non-moving party's case." Id. at 325.

12.     If the moving party establishes the absence of a genuine issue of material fact, the

burden shifts to the non-moving party to "do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).

13.     The clear intention of the summary judgment procedure is to protect innocent

Defendants, such as Five Star, John Scheler, Peter Scheler and Fred Scheler from continuing to

maintain a costly defense against unfounded complaints by disposing of legally or factually

insufficient claims.

**A.     Plaintiff has not engaged in a protected activity nor was there a causal link between the alleged activity and plaintiff's termination and therefore Summary Judgment is required as a matter of law.**

14.     In *Scholly v. JMK Plastering, Inc.*, 2008 U.S. Dist. LEXIS 49958 (E.D. Pa. June

25, 2008), the court noted that "[t]he Third Circuit has held that in order to establish a prima

facie case of retaliatory discrimination, it must be shown that (1) the plaintiff engaged in

protected activity, (2) the employer took an adverse employment action against him, and (3)

there was a causal...link between the plaintiff's protected action and the employer's adverse

action. See *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 Fed. Appx. 936, 2003 U.S. LEXIS

16347 at *6-7 (3d Cir. July 30, 2003)(citing *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173,

177 (3d Cir. 1997))."

15.     According to the anti-retaliation provision of the Federal Labor Standards Act, 29

U.S.C. §215(a)(3), it is unlawful to discharge an employee if he has "filed any complaint or

instituted or caused to be instituted any proceeding" under the FLSA.

16.     Plaintiff's actions, as cited above, do not constitute filing a complaint or

instituting or causing to be instituted any proceeding to constitute a protected activity under the

FSLA, in that no complaint was filed with the Department of Labor. Defendants were not under the mistaken belief that a Complaint was filed, nor did Plaintiff's activities constitute the filing of an "unofficial" complaint with his employer.

17.     Further, the evidence clearly reflects that Plaintiff himself did not have a good faith belief that the employer's conduct, with regard to his commission, was illegal. *See, Nairene v. Manzo* 1987 U.S. Dist. LEXIS 2723 (ED.PA) citing *Love v. Re/Max of America, 738 F.2d 383, 387 (10th Cir. 1984).*

18.     Plaintiff is unable to establish a prima facie case to establish a causal link between his termination and the alleged protected action; and, therefore his claim must fail. *Kachmur v. Sungard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir. 1997). *See also, Preobrazhenskaya v. Merchy Hall Infirmary,* 71 Fed. App. 963: 2003 U.S. LEXIS 16347: 9 Wage & Hour Cas. 2d (BNA) 864. (3d Circuit, 2003, Non Precedential)

**B.     Plaintiff is unable to demonstrate that Defendants' explanation for plaintiff's termination was pretextual.**

19.     Defendants have testified that Plaintiff was terminated over the concerns for the safety of co-workers and because of Plaintiff's personal attacks on John Scheler and the company itself. *See* Exhibits 5, at pp. 129-130,   Exhibit 6, at p. 11-13 and Exhibit 7 at 73-78.

20.     Once a Defendant articulates some legitimate, nondiscriminatory reason for the employment decision, the burden shifts to Plaintiff to demonstrate by a preponderance of the evidence that the reasons offered by defendant are not the true reasons for his termination but are merely a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804.

21.     Defendants' burden in this regard is "relatively light," merely requiring evidence which if taken as true would permit the conclusion that there was a nondiscriminatory reason for

the challenged action. *Fuentes v. Perskie,* 32 F. 3d 759, 763 (3d Cir. 1994), and *Cange v. Phila.*

*Parking Auth.* 2009 U.S Dist. Lexis 101096; 107 Fair Empl. Prac. Cas. (BNA) 1402.

22      In order to discredit an employer's reason for the termination, the plaintiff cannot

simply show that the employer's decision was wrong or mistaken, since the factual dispute is

whether the retaliatory animus motivated the employer, not whether the employer is wise,

shrewd, prudent or competent. *Cange,* at 33, citing *Fuentes,* 32 F.3d at 765.

23.     Rather, Plaintiff must show such weaknesses, implausibilities, incoherencies or

contradictions in the employer's proffered legitimate reason for its action that a reasonable fact

finder could rationally find them unworthy of credence, and hence infer that the employer did not

act for the asserted nondiscriminatory reasons.  Id.

24.     In the instant matter, Defendants' have testified that they had had issues with

McElroy even prior to the confrontation involving Ms. Bell.  Fred Scheler had indicated he was

against ever hiring McElroy due to the way he disparaged his employer at the time of his initial

interview with Five Star.  Exhibit 7, p.48-51.

25.     John Scheler had testified McElroy had not been taking him on client visits as

expected and that he had been previously insubordinate (Exhibit 5, pp. 56, 64-66), telling John

Scheler, "not to fucking walk away from me when I am talking to you."  Exhibit 5, p. 54.

26.     It is undisputed by plaintiff that the comments he made with regard to John

Scheler and Five Star could "absolutely" be interpreted by the Schelers to be offensive.  Further,

especially in this day and age of work place violence, given the erratic behavior exhibited by

Plaintiff previously to Ms. Buda and subsequently to Ms. Bell, Defendants had ample reason to

believe that their employees felt threatened by McElroy's behavior, justify his termination. *See,*

Exhibit 8, Deposition Transcript of Carmen DeStefano, *see also,* Affidavit of Ms. Buda, attached

hereto as Exhibit 9.

27.     Plaintiff is unable to offer any evidence of the pretextual nature of his termination,

other than the likely argument of timing.  While it is conceded that the timing of an action may

be considered, it is by no means dispositive, especially in light of the corresponding comments

and conduct of McElroy as previously cited.  *See, Campbell v. Abercrombie & Fitch,* 2005 U.S.

Dist. LEXIS 11507 at 23; 96 Fair Empl. Prac. Cas (BNA) 55; 86 Empl. Prac. Dec. (CCH)

P42019 *(*which notes that temporal proximity is neither necessary nor sufficient to establish

causation).

WHEREFORE, Moving Defendants Five Star International LLC, John A. Scheler, Fred

P. Scheler, and Peter F. Scheler, seek summary judgment in their favor and against Plaintiffs.


HENDRZAK & LLOYD


/s/ William E. Dengler
WILLIAM E. DENGLER, ESQUIRE
Attorney for Defendants Five Star
International LLC. John A. Scheler, Fred P. Scheler,
and Peter F. Scheler
Attorney I.D. No.: 72696
3701 Corporate Center Parkway, Suite 100
Center Valley, Pennsylvania  18034
(610) 709-8705
(610) 709-8560 (fax)


Dated:  12/1/10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES MCELROY,** | : | **Civil Action No. 09-5475 (TMG)** |
| **Plaintiff** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **v.** | : | |
| | : | |
| **FIVE STAR INTERNATIONAL, LLC.,** | : | |
| **JOHN A. SCHELER,** | : | |
| **FRED P. SCHELER,** | : | |
| **AND PETER F. SCHELER** | : | |

### DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

## I.   PROCEDURUAL HISTORY:

Plaintiff commenced this action on November 17, 2009, with the filing of the Complaint which is attached hereto as Exhibit 1. Count I of Plaintiff's Complaint purports to allege a cause of action against Defendants under the Fair Labor Standards Act (FLSA). Count II of Plaintiff's Complaint alleged a cause of action against Defendants alleging a violation of public policy sufficient to support a claim for wrongful discharge under Pennsylvania law, citing generally a violation of the public policy encompassed in the Wage Payment and Collection Law (WPCL).

## II.   STATEMENT OF FACTS

Plaintiff was employed by Five Star International, LLC, (Five Star), from July 31, 2007 to November 19, 2007 as a commissioned sales person. *See* Exhibit 1 and *see also* Exhibit 4 Deposition of Vicky Bell. On or about November 15, 2007, Plaintiff met with Vicky Bell, an administrative assistant to John Scheler at Five Star. *See* Exhibit 1 ¶ ¶ 30, 33, *see also* Exhibit 4, p. 30. Ms. Bell was not in a supervisory/management position, but rather did things such as scheduling and answering phones. *See* Exhibit 4, p. 10, l. 22. Both Ms. Bell and McElroy were

direct reports to John Scheler.  Ms. Bell was not involved in the payments of commissions to sales people. *See* Exhibit 4, p.24, l. 22.

Plaintiff has testified that at the time of the meeting with Ms. Bell, he had told her that "he did not approve of John withholding $1,000 from his paycheck, with no explanation, even though it came into the next pay period's check.  That I did not think the Department of Labor would approve of such a thing, and that I might even hire an attorney to represent me in that matter." *See* Exhibit 3, Deposition of Plaintiff McElroy, p. 80, l.22. *See also* Exhibit 1, ¶ 32.

However, Plaintiff has candidly testified that he doesn't know why the commission was paid in one check or the other. *See* Exhibit 3, p. 82-83.  He was in fact paid what he deemed the proper commission in the next pay check, approximately one month prior to his discussion with Ms. Bell.

Plaintiff did not ever file a Complaint with the Department of Labor and specifically has denied ever saying that he was going to report Five Star to the Department of Labor. *See* Exhibit 3, pp. 82-83.

Plaintiff admits that during the "meeting" with Ms. Bell, he questioned the eithics of John Scheler. *See* Exhibit 3, page 81-82.  Plaintiff also admits that he was agitated during the meeting with Ms. Bell. *See* Exhibit 3, page 87.   Plaintiff has admitted that some of the things he said to Vicky Bell about John Scheler or the Scheler family could "absolutely" be reasonably interpreted by the Schelers' as offensive. *See* Exhibit 3, p. 119, l. 15- p. 120, l. 9.

Plaintiff further specifically instructed Ms. Bell not to advise John Scheler of their conversation. Exhibit 3, p. 81.  Plaintiff also testified that he never, either prior to the conversation with Bell or subsequent to it, had spoken with Diane Minmall (who tabulates the commission) nor John Scheler about his issue with the commission. *See* Exhibit 3, p. 92 l. 1-22.

Plaintiff further testified that he did not want her to discuss the commission issue with John Scheler, because if he thought it was necessary it should be between him (plaintiff) and John and *because the issue had been resolved.* *See* Exhibit 3, p. 103, l. 23- 104, l.4. In fact, McElroy testified that he considered his conversation with Ms. Bell as merely an opportunity for him to blow off some steam. *See* Exhibit 3, p. 104, l. 5.

Plaintiff has testified that his employment was terminated by John Scheler, who advised him that he was not a team player, he tended to do things his own way and that he did not fit the Five Star culture. *See* Exhibit 3, p. 100 l. 11.

He has never been advised by anyone that works for Five Star that he was fired for any reasons other that provided him at the time of his termination by John Scheler. *See* Exhibit 3, p. 103. Plaintiff was never advised by anyone that works for Five Star that his termination was related to any comments he may have made about the Department of Labor. *See* Exhibit 3, p. 103. Plaintiff has never discussed the reasons for his termination with Pete Scheler or Fred Scheler. *See* Exhbit 3, p. 103.

At the time of the incident with McElroy, Vicky Bell had been employed by Five Star as an administrative assistant to John Scheler. She was terminated January of 2009. *See* Exhibit 4, Deposition of Vicky Bell, p. 10-12.

Ms. Bell has testified that she spoke with McElroy on November 15, 2007, at which time he came into her office and shut the door and indicated that he was sick and tired of being screwed by the company and that maybe he should contact the Department of Labor. *See* Exhibit 4, pages 24-25, 41-43 with exhibit Bell 1.

Further, she has characterized McElroy as appearing very agitated and red in the face, during their meeting he told her that their conversation "better not leave this room." *See* Exhibit 4, pp. 28-29. She could tell that McElroy was mad. *See* Exhibit 4, p. 25, L 6.

3

She also indicated that McElroy indicated that they (Five Star) treat employees nice in the beginning and then like this, and that you can't speak to John Scheler, that John Scheler is aloof and that he is not liked by many in the company. *See* Exhibit 4, p. 26 and p. 44-46.

Ms. Bell testified that she told John Scheler about her conversation with McElroy the following Monday. Exhibit 4, p. 35. Ms. Bell indicated that after she discussed the meeting with McElroy, she sensed that John Scheler was upset to a degree and hurt, by the comments from McElroy. *See* Exhibit 4, p. 36.

Ms. Bell testified that she does not know who made the determination to fire McElroy or why he was terminated. *See* Exhibit 4, p. 48, l 23- 49, l. 21.

John Scheler has testified that on November 19, 2007 he was approached by Vicky Bell. *See* Exhibit 5, Deposition of John Scheler, p. 47.   Scheler indicated that Ms. Bell approached; appearing very agitated and advised him that she afraid to tell him something because she feared retribution from an employee, Jim McElroy. *See* Exhibit 5, p. 127, l. 13-24. John Scheler indicated that Ms Bell had advised him that McElroy had said awful things about John Scheler personally and about Five Star, and in particular that Five Star was screwing him and that he was tired of it. *See* Exhibit 5,  p. 53, l 1-6.

John Scheler testified that Bell indicated that during her conversation with McElroy, that he had made very disparaging remarks about John and Five Star. *See* Exhibit 5, P. 128, l. 1-5. He further was under the impression from Ms. Bell that McElroy was screaming and that she feared for her safety. *See* Exhibit 5, p. 129, l. 6-17.

He noted that Ms. Bell did not really provide specifics as to what McElroy said about Five Star and John Scheler other than that they were terrible things about him and Five Starr. *See* Exhibit 5, p. 129, l. 12-21.

4

John Scheler indicated that at that point, he had made the determination that if McElroy had enough bravado to be disparaging himself and Five Star to his assistant he was also likely doing it in the marketplace. *See* Exhibit 5, p. 129, l. 24- 130.  John Scheler, further testified that he did not recall whether or not Bell had told him about McElroy indicating that, he did not think the Pennsylvania Department of Labor would approve of the pay practices comment, but that instead his focus instead was on the fact that he had an employee whom he believed feared for her safety and the comments disparaging him personally and the company in general. *See* Exhibit 5, p. 130, l. 9-24.

Following his meeting with Ms. Bell, John Scheler spoke with Pete Scheler and Fred Scheler regarding his conversation with Ms. Bell., at which time they elected to terminate McElroy. *See* Exhibit 5, p. 50, l. 14.

Peter Scheler, the founder and a managing member of Five Star, testified that he had received a call from John Scheler, wherein he was advised that there was an incident in the Lancaster store where McElroy was abusive to the girls, and that the girls were concerned for their welfare. *See* Exhibit 6, p. 11, 5-10.

Peter Scheler indicated that he believed that the incident involved Vicky Bell. *See* Exhibit 6, p. 13, l. 13.  He further testified that would not have allowed John Scheler to fire McElroy because of a complaint to the Department of Labor. *See* Exhibit 6, p. 25, l. 4-25. and p. 26, 1-9.  Peter Scheler also testified that for the most part he was not involved in the hiring and firing of employees and that he did not make any decisions that were overriding in nature. *See* Exhibit 6, p. 26, l. 11-17.

Fred Scheler, President of Five Star, testified that he was advised that a meeting took place between Vicky Bell and McElroy during which McElroy was outspoken, erratic and disparaging of John Scheler. *See* Exhibit 7, p. 72, l. 16.  He further indicated that he was advised

by John Scheler that Ms. Bell and Ms. Buda were concerned being around McElroy and that McElroy did not like working for John Scheler. *See* Exhibit 7, p. 72-74.

Fred Scheler testified that during this telephone call with John Scheler and Pete Scheler and they agreed that McElroy should be terminated. Specifically, Fred Scheler testified that he was concerned over how McElroy was representing the company in the marketplace, especially given his prior knowledge of how McElroy had been disparaging of a prior employer while still employed by them. *See* Exhibit 7, p. 77.

Fred Scheler indicated that given his understanding that McElroy was not speaking very highly of John Scheler with Ms. Bell, that he did not feel that McElroy would be doing a good job representing the company. *See* Exhibit 7, p. 77, l. 17- p. 78.

Fred Scheler indicated he had no recollection of discussing the Department of Labor at the time of that conversation; however, it did not matter if they would have, because his concern was over how McElroy would be representing their brand in the marketplace. *See* Exhibit 7, p. 85, l. 11- p. 87, l. 6.

Carmen DeStefano began his employment with Five Star on October 22, 2007.  Exhibit 8, Deposition of Carmen DeStefano, p. 7.  DeStefano testified that John Scheler advised him that McElroy was being terminated due to concerns his conduct on an occasion or two, which left other employees concerned for their well being, including an incident with Ms Bell. *See* Exhibit 8, p. 13, l. 4..  He was advised that during the confrontation with Ms. Bell, McElroy was very critical/disparaging of John Scheler and that Ms. Bell was somewhat fearful of McElroy. *See* Exhibit 8, p. 13, l. 15-22 , p.14, l. 6-18 and p. 27, l. 2-15.

DeStefano was not aware of any comments or threats made by McElroy regarding the Department of Labor. *See* Exhibit 8, p. 14, 1. 9.  He testified that he was present when McElroy

was fired and recalled comments by John Scheler to the affect that McElroy did not have the proper demeanor nor attitude for the job. *See* Exhibit 8, p. 18, l. 15-25.

DeStefano also testified that he had also spoken with Vicky Bell, who had indicated that when she had spoken to McElroy he was agitated and she was frightened of him because she was not sure just how volatile he would get or upset he was going to be, and whether she or John were in any danger. *See* Exhibit 8, p. 25, l. 1-25.

DeStefano testified that, based on the conversation he had with Ms. Bell, he believed she was scared. *See* Exhibit 8, p. 26, l. 18. These concerns are echoed in the Affidavit of Ms. Buda, attached as Exhibit 9, who also indicated that Ms. Bell had indicated that she feared for both her own and John Scheler's safety following the confrontation with McElroy. Ms. Buda further indicated that she to have previously been the subject of aggressive, erratic and threatening behavior on the part of McElroy. *See* Exhibit 9.

## III.   QUESTIONS PRESENTED

**A.**   **Did Plaintiff engage in a protected activity by making a fleeting comment to a co-worker, that the Department of Labor may not approve of an error to a commission check that had been resolved?**

Suggested Answer:  No.

**B.**   **Has Plaintiff present sufficient evidence to establish that his employer's legitimate business reasons for his termination were pretextual in nature?**

Suggested Answer:  No.

## IV.   __ARGUMENT__

Federal Rule of Civil Procedure 56 provides the mechanism whereby a party may file for summary judgment:

> (b) By a Defending Party.  A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim.

F.R.C.P. 56

Summary Judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the most favorable light to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law.  State Farm Mutual Automobile Insurance Company, et. al. v. Carter et. al., 287 F. Supp. 2d 587 (E.D. PA 2003).

The moving party has the initial burden to identify evidence that it believes shows an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'--that is, pointing out to the District Court--that there is an absence of evidence to support the non-moving party's case."  Id. at 325.

If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The clear intention of the summary judgment procedure is to protect innocent Defendants, such as Five Star, John Scheler, Peter Scheler and Fred Scheler from continuing to maintain a costly defense against unfounded complaints by disposing of legally or factually insufficient claims.

The burden of proof for retaliation claims made under the FLSA is governed by the framework erected in *McDonnell Douglas Corp. v Green,* 411 U.S. 792, 93 S.Ct. 1817,, 36 L. Ed. 668 (1973). *See, eg. Brock v. Richardson*, 812 F.2d 121, 123 n.1 (3d Cir. 1987), which sets forth a burden-shifting scheme for retaliation cases: (a) the plaintiff must first establish a prima facie case; (b) if the plaintiff is successful, then the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its employment action; and if the employer meets this burden then shifts back to the plaintiff to show that the employer's stated reason for the employee's termination was in fact pretextual. 411 U.S. at 802, see also, *Dougherty v. Ciber,* 2005 U.S. Dist. LEXIS 44294 (MD PA, 2005 Memorandum Opinion, Judge Kane)

Defendants have articulated a legitimate non-discriminatory business reason for Plaintiff's termination- more specifically because McElroy acted in such a manner that his co-worker (Vicky Bell) feared for her safety and for his admittedly disparaging comments with respect to John Scheler and Five Star. Defendant's concerns based on how they interpreted Ms. Bell's comments are both reasonable and legitimate reasons for plaintiff's termination. While it is anticipated that Plaintiff will argue that Ms. Bell has subsequently denied that she was in fear for her safety, the proper measure is whether John Scheler's actions were reasonable given his interpretation of Ms. Bell's comments. His interpretation of Bell's state of mind is corroborated by DeStefano and Ms. Buda, both of whom had separate conversations with Ms. Bell and independently came to the same conclusions.

**A.     Plaintiff has not engaged in a protected activity nor was there a causal link between the alleged activity and plaintiff's termination and, therefore, Summary Judgment is required as a matter of law.**

In *Scholly v. JMK Plastering, Inc.*, 2008 U.S. Dist. LEXIS 49958 (E.D. Pa. June 25, 2008), the court noted that "[t]he Third Circuit has held that in order to establish a prima facie

case of retaliatory discrimination, it must be shown that (1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal…link between the plaintiff's protected action and the employer's adverse action. See *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 Fed. Appx. 936, 2003 U.S. LEXIS 16347 at *6-7 (3d Cir. July 30, 2003)(citing *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997))."

According to the anti-retaliation provision of the Federal Labor Standards Act, 29 U.S.C. §215(a)(3), it is unlawful to:

> [D]ischarge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

**1.    A Complaint was not filed or believed to been filed under the FSLA.**

It is clear from the record that:

1.    Plaintiff did not file a complaint with the Department of Labor or other industry board.

2.    Plaintiff did not institute or cause to be instituted any proceeding or testified at or was about to testify in any such proceeding; and

3.    Plaintiff had not served on an industry committee.

The Courts have carved out an exception to these requirements if it can be shown that the employer had the "mistaken belief that an employee had engaged in protected activity sufficient to trigger the application of the anti-retaliation provision of the FLSA, however, such a finding is not supported by the evidence or testimony elicited in the instant matter. *See, Brock v. Homer Alan Richardson* 81 F.2d 121, 125: 1987 US App. Lexis 2301

10

In *Brock,* the employer testified that they believed that Banyas, their employee had filed a complaint and was the cause for the Wage Hour investigation they were undergoing, when in fact the investigation was actually initiated at the request of a co-worker, during which Banyas did provide information to the investigation.  In the instant matter, there was no belief an ongoing investigation, but rather plaintiff's claims to a co-worker that he did not think the Department of Labor would approve with what was done regarding his commission payment. Exhibit 3, McElroy p. 80, L. 2.  Ms. Bell testified that McElroy only commented that maybe he should contact the Department of Labor, Exhibit 4, Bell deposition page 24-25 and 41-43 with Bell Exhibit 1.

John Scheler's testimony was that he did not recall if Bell initially told him about McElroy believing that he did not think the Department of Labor would approve of the pay practices, *see* Exhibit 5, p. 130, l. 9-24.  The record further reflects that Peter Scheler and Fred Scheler did not even recall discussing the threat to consider Department of Labor when they met to terminate plaintiff.  *See* Exhibits 6, p. 11, l. 5-10, p. 13, l.13 and p. 25-26 and Exhibit 7, p. 72-74 and 85-87.  In short, there was no testimony from anyone including Plaintiff that he was doing anything other than venting whether the Department of Labor would approve of the actions of Five Star, and unlike the direct testimony provided in *Brock,* absolutely no testimony from which the finder of fact could conclude that Defendant's had a belief that McElroy had instituted an action with the Department of Labor.

### 2.    Plaintiff's Actions Did Not Amount to an Internal Complaint to trigger the protections of Section 15(a) (3)

The Third Circuit has not addressed whether Section 15(a) (3) of the FSLA protects internal complaints.  *Edwards v. AH Cornell,* 610 F.2d 217 at 224; 210 US App. Lexis 12962 (June, 2010) The Circuits have been split in this regard, however, with some of the Court of

Appeals concluding that complaints includes "internal complaints" *see eg. Hagan v. Echostar Satellite, LLC* 529 F.3d 617, 626 (5th Cir. 2008) and *Lambert v. Ackerly* 180 F. 3d. 997 (9th Cir. 1999), which the Third Circuit has cited with approval in dicta. *Edwards* at 224, Citing *Brock,* 812, F.2d at 124. (However, in *Edwards,* the Court found that under the anti-retaliation provision of Section 510 Erisa, 29 U.S.C. 1140, unsolicited internal complaints are not protected)

However, a number of Circuits have found that internal complaints are not sufficient to trigger the protection under the FSLA. *See, Ball v. Memphis Bar-Q. Co,* 228 F.3d 360 (4th Cir. 2000) and *Lambert v. Genesse Hosp.,* 10 F.3d 834, 838 (2d Cir. 1993)

While it appears that the filing of an internal complaint would be considered sufficient by the Third Circuit, a determination must be made as to whether Plaintiff's actions even rise to the level of an internal complaint. More specifically, does an unwritten, purely verbal comment to a co-worker, rises to the level of a protected activity under the statue.

The record is clear that McElroy never raised the issue of a complaint regarding the commission payment to anyone other than Ms. Bell, who was an administrative assistant at Five Star. Plaintiff specifically indicated that he did not discuss this "complaint" with John Scheler, in part because he considered it resolved. Exhibit 3, p. 103, l.23- p. 104, l. 1.

In *Coyle v. Madden, Individually and d/b/a Madden Animal Hospital,* 2003 U.S. Dist. LEXIS 23830 (E.D. Pa. Dec. 17, 2003), the US District Court for the Eastern District of Pennsylvania noted that the language "has filed any complaint" is ambiguous. However, it noted that courts "have reasoned that the broad purpose of the FLSA would suggest an equally broad reading of the statute..." Relying on *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 64 S. Ct. 698, 88 L. Ed. 949, 1944 U.S. LEXIS 1313, 8 Lab. Cas. (CCH) P51175, 4 Wage & Hour Cas. (BNA) 293, 152 A.L.R. 1014 (1944) (superseded by statute – unrelated issues), it noted that the statute encompasses "two kinds of protected activity, filing a complaint

and causing a proceeding to be instituted." The *Coyle* Court further noted that the First Circuit had observed that "if 'filed any complaint' were read to encompass only filings with a court or government agency, one would wonder why the additional language 'or instituted or caused to be instituted any proceeding under or related to this chapter' was inserted. *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 at 41; see also *Lambert v. Ackerley*, 180 F.3d 997 at 1004 (quoting *Valerio*)...courts have aptly reasoned that the operative triggering factor in the anti-retaliation statute is the assertion of statutory rights, not the filing of a formal complaint with a government agency or the courts. *EEOC v. Romeo*, 976 F.2d 985 at 989 (holding that employee who communicated substance of allegations to employer but who did not refer to statute by name triggered § 215(a)(3) protection); *Love v. Re/Max of America, Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) ("The Act also applies to the unofficial assertion of rights through complaints at work.")"

In *Nairne v. Manzo*, 1987 U.S. Dist. LEXIS 2723 (E.D. Pa. Apr. 3, 1987), a case in which the plaintiff employee brought suit against her former employer alleging retaliatory discharge in violation of FLSA, the court denied the employer's summary judgment motion on the retaliatory discharge claim. In that case, plaintiff worked for defendant as an ophthalmological technician. She posted information in defendant's office regarding the rights of employees who are covered by the FLSA to receive overtime pay of time and a half although she was not aware that she herself was an exempt professional and didn't qualify for overtime pay. She alleged that defendant reacted angrily to the posting, telling her he did not pay overtime and became rude and hostile to her, and subsequently terminated her in retaliation for the posting. The court concluded that §215(a) (3) "encompasses unofficial complaints made at work as well as official complaints filed with the Department of Labor. See *Love v. Re/Max of America, Inc.*, 738 F.2d 383, 387 (10th Cir. 1984); *Marshall v. Parking Co. of America -- Denver, Inc.*, 670 F.2d 141, 142 (9th Cir. 1981); *Brennan v. Maxey's Yamaha Inc.*, 513 F.2d 179, 181 (8th Cir. 1975), *Daniel v.*

13

*Winn-Dixie Atlanta, Inc.*, 611 F.Supp. 57, 62 (D.C. Ga. 1985); *Hayes v. McIntosh*, 604 F.Supp. 10, 16 (N.D. Ind. 1984).

However, assuming that the Third Circuit does in fact allow for internal complaints, each of the cases involved complaints to the actual employer. In *Nairne*, the employee not only posted the issue, but discussed it with her employer, in *Love* the plaintiff wrote to the president of the company and in *Coyle* the employee had repeated conversations with his employer regarding the specific nature of his complaint. In those instances where the Courts have found that internal complaints were sufficient, the substance of the complaints were actually communicated by the aggrieved party to someone in the position authority or at a minimum the direct supervisor of the complaining party. In the instant matter, no complaint, verbal or otherwise, was ever made to the employer, yet alone the specific nature of the complaint. In fact, Plaintiff, during his discussion with his co-worker, Ms. Bell, specifically indicated that he did not want his issue with the commission discussed with Schuler, because if he thought it was necessary, it should be done by him and he considered the issue resolved. *See* Exhibit 3, McElroy deposition, pp.103, l. 23- 104, l. 4) Even Plaintiff has conceded that he considered his conversation with Ms. Bell as on opportunity to "blow off steam" rather than as a complaint. *See* Exhibit 3, p. 104, l. 5. It is common sense that, not all abstract grumblings will suffice to constitute the filing of a complaint with one's employer. *See, Valerio v. Putnam Assoc., Inc.* 173 F.3d 35 at 44, 1999 U.S. App. Lexis 6539 (1st Cir. 1999).

Even setting aside the fact that the complaint was not made to a supervisor or manager, the Circuits are in conflict as to whether such a complaint be in writing or if verbal complaints are sufficient. The Supreme Court has recently agreed to address the question of whether or not a purely verbal complaint is considered protected conduct under the FLSA's anti-retaliation provision. *Kasten v. Saint-Gobain,* 570 F. 3d. 834; 2009 U.S. App. Lexis 1319 (7th Cir. Wis.

2009), writ of certiorari granted, 130 S. Ct. 1890, 176 L. Ed.2d 361, 2010 U.S. Lexis 2654, 78 U.S.L.W. 3546 (U.S. 2010).

The FSLA's retaliation provision prohibits the discharge of an employee who has "filed any complaint" 29 U.S.C. 215 (a) (3). The Seventh Circuit, recently addressed this issue in *Kasten v. Saint-Gobain,* 570 F. 3d. 834; 2009 U.S. App. Lexis 1319 (7th Cir. Wis. 2009), writ of certiorari granted, 130 S. Ct. 1890, 176 L. Ed.2d 361, 2010 U.S. Lexis 2654, 78 U.S.L.W. 3546 (U.S. 2010)

In *Kasten*, the Seventh Circuit found that while intra-company complaints were protected activity, unwritten verbal complaints were not protected activity. *Id.* In reaching its conclusion, the Court looked to the language of the statue that provision prohibits the discharge of an employee who has "filed any complaint" 29 U.S.C. 215 (a)(3). The Appellate Court agreed with the District Court's finding that expressing an oral complaint is not the same as filing a complaint. *Id. At 838.* The Court noted that the district court correctly concluded that purely verbal complaints are not protected because the plain language of the statue uses the verb "to file" which connotes the use of a writing. *Id. At 839.*

While the Supreme Court's decision in this regard remains unknown for the present, regardless of whether complaints to an employer, be they verbal or written, are ultimately considered protected, no reasonable reading of the statute would extend the protection to fleeting comments to a co-worker, who is not charged with any supervisory or managerial powers.

Further, the FLSA's protections only extends to an employee who brings a complaint, regardless of merit, as long as the complaint is based on a good faith belief that the employer's conduct was illegal. See *Love*, [supra] at 387; *Brennan v. Maxey's Yamaha, Inc.,* [*supra*] at 181." The evidence clearly reflects that Plaintiff, himself did not have a good faith belief that the employer's conduct with regard to his commission was illegal. *See, Nairene v. Manzo* 1987

U.S. Dist. LEXIS 2723 (ED.PA) citing *Love v. Re/Max of America, 738 F.2d 383, 387 (10th Cir. 1984)*. Plaintiff by his own admission, indicated that the issue had already been resolved and that **he did not know** why the commission was not paid as he anticipated, conceding that it may not have been paid due to him not completing his call reports or any other number of reasons. *See* Exhibit 3, McElroy, pp.103-104 and 82-83.

### 3. Plaintiff is unable to establish a causal connection between his alleged Complaint and his termination.

The third prong of establishing a prima facie case for discriminatory retaliation requires the plaintiff to establish a causal link between his protected action and the employer's adverse action. *Kachmur v. Sungard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir. 1997).

In the instant matter, Plaintiff has filed suit not only against Five Star, but has raised claims individually against Defendants John Scheler, Peter Scheler, and Fred Scheler the managing members of Five Star. *See* Exhibit 1. Plaintiff has recently stipulated to the dismissal of Peter Scheler and Fred Scheler. More specifically, he has plead that Defendant John Scheler knew of his complaint about unlawful wage practices, when Ms. Bell informed him and that Peter Scheler and Fred Scheler agreed that McElroy should be terminated from employment because of their belief that he had complained about Defendant's actions. *See* Exhibit 1, ¶¶ 57-58.

While defendants believe, as cited above, that Plaintiff's actions did not constitute protected activity under the FLSA anti-retaliation provision, even if they were plaintiff is unable to show a causal connection between the alleged activity and his termination.

In order to establish a causal connection, plaintiff must establish that the principals who made the decision to fire him were aware of the protected action. *See, Jones v. School Dist. of Philadelphia, 198 F. 3d 403, 415 (3d Cir. 1999)*

Plaintiff has testified that he had no discussions with either John, Pete or Fred Scheler, relative to his issues with the manner in which he was paid his commission. *See* Exhibit 3, McElroy deposition, p.92, l. 1-22, 103-104. Defendant John Scheler testified that he did not recall whether Ms. Bell had told him about McElroy's comment that the Department of Labor might not approve of their pay practices. *See* Exhibit 5, 130.

Fred Scheler also testified that he was not aware of any discussion of McElroy's comment to Ms. Bell threatening a complaint to the department of labor during the conversation between with John and Peter Scheler in which they decided to terminate McElroy's employment. Exhibit 7, Deposition of Fred Scheler, pp. 85-87. Peter Scheler had testified that his recollection was that he was advised of an incident wherein McElroy was abusive to Vicky Bell, who was concerned for her welfare. *See* Exhibit 6, p. 11, l. 5-10 and p. 13, l. 13. He further testified that, he would not have agreed to terminate McElroy if the termination was for making a complaint to the Department of Labor. *See* Exhibit 6, pp. 25-26.

This factual scenario is similar to that which occurred in *Preopbrazhenskaya v. Mercy Hall Infirmary,* 71 Fed. Appx. 936, 2003 U.S. App. Lexis 16347 (3d. Cir., 2003, UNPUBLISHED) The plaintiff alleged that she was terminated for contacting the Department of Labor's Wage and Hour Division, however, Sister Welsh, who made the determination to terminate Plaintiff had executed a verification indicating that at the time she terminated Plaintiff she was not aware that Plaintiff had contacted the Department of Labor. *Id. 939.* The Court agreed with the Magistrates findings that while the Plaintiff's direct supervisors may have been aware of the complaint, it did not necessarily mean that they divulged that information to Sister Welsh or had any input into the decision to terminate Plaintiff. *Id.*

But rather, it was noted that there was ample evidence of the deterioration of the relationship between the parties arising from causes other than Plaintiff's Complaint. *Id.*

17

Similarly, while there is scant evidence that John Scheler was aware of any protected activity on

behalf of McElroy, there is absolutely no evidence that Peter Scheler or Fred Scheler knew of or

had reason to know of McElroy's alleged protected activity. But rather, that the decision by the

three of them to terminate McElroy arose from his conduct during the meeting with Ms. Bell as

well as admittedly disparaging comments directed toward John Scheler and Five Star in general.

### B.   Plaintiff is unable to demonstrate that Defendants' explanation for plaintiff's termination was pretextual.

Once a Defendant articulates some legitimate, nondiscriminatory reason for the

employment decision, the burden shifts to Plaintiff to demonstrate by a preponderance of the

evidence that the reasons offered by defendant are not the true reasons for his termination but are

merely a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804.  Defendant's burden

in this regard is "relatively light", merely requiring evidence which if taken as true would permit

the conclusion that there was a nondiscriminatory reason for the challenged action. *Fuentes v.*

*Perskie,* 32 F. 3d 759, 763 (3d Cir. 1994), and *Cange v. Phila. Parking Auth.* 2009 U.S Dist.

Lexis 101096; 107 Fair Empl. Prac. Cas. (BNA) 1402.

Defendants have testified that Plaintiff was terminated over the concerns for the safety of

co-workers and because of Plaintiff's personal attacks on John Scheler and the company itself.

*See* Exhibits 5, J. Scheler deposition at 129-130,  Exhibit 6, P. Scheler deposition at 11-13 and

Exhibit 7, F. Scheler deposition at 73-74, 77-78.

In order to discredit an employer's reason for the termination, the plaintiff cannot simply

show that the employer's decision was wrong or mistaken, since the factual dispute is whether

the retaliatory animus motivated the employer, but not whether the employer wise, shrewd,

prudent or competent. *Cange,* at 33, citing *Fuentes,* 32 F.3d at 765.  Rather, Plaintiff must show

such weaknesses, implausibilities, incoherencies or contradictions in the employer's proffered

legitimate reason for its action that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted nondiscriminatory reasons.  Id.

In the instant matter, Defendants have testified that they had had issues with McElroy even prior to the confrontation involving Ms. Bell.  Fred Scheler had indicated that he was against ever hiring McElroy due to the way he disparaged his employer at the time of his initial interview with Five Star.  *See* Exhibit 7, p.48-51.

John Scheler had testified that McElroy had not been taking him on client visits as expected and that he had been previously insubordinate (Exhibit 5, p. 56, 64-66), telling John Scheler, "not to fucking walk away from me when I am talking to you." *See* Exhibit 5, p. 54.

It is undisputed by plaintiff that the comments he made with regard to John Scheler and Five Star could "absolutely" be interpreted by the Schelers to be offensive.  Further, especially in this day and age of work place violence, given the erratic behavior exhibited by plaintiff previously to Ms. Buda and subsequently to Ms. Bell, Defendants had ample reason to believe that their employees felt threatened by McElroy's behavior, which is further supported by the testimony of Mr. DeStefano, Exhibit 8; and the independent Affidavit of Ms. Buda, Exhibit 9.

Plaintiff is unable to offer any evidence of the pretextual nature of his termination, other than the likely argument of timing.  While it is conceded that the timing of an action may be considered, it is by no means dispositive, especially in light of the corresponding comments and conduct of McElroy as previously cited. *See, Campbell v. Abercrombie & Fitch,* 2005 U.S. Dist. LEXIS 11507 at 23; 96 Fair Empl. Prac. Cas (BNA) 55; 86 Empl. Prac. Dec. (CCH) P42019, which notes that temporal proximity is neither necessary nor sufficient to establish causation.

## V.    CONCLUSION OF LAW:

For all of the foregoing reasons, Moving Defendants Five Star International LLC, John

A. Scheler, Fred P. Scheler, and Peter F. Scheler respectfully request summary judgment in their

favor and against Plaintiff.


HENDRZAK & LLOYD


/s/ William E. Dengler
WILLIAM E. DENGLER, ESQUIRE
Attorney for Defendant Five Star
International LLC. John A. Scheler, Fred P. Scheler,
and Peter F. Scheler
Attorney I.D. No.: 72696
3701 Corporate Center Parkway, Suite 100
Center Valley, Pennsylvania 18034
(610) 709-8705
(610) 709-8560 (fax)


Dated: 12/1/10

20